UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOG EXPLORATION OFFSHORE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-667** |
| **SAMSON CONTOUR ENERGY E&P, LLC ET AL.** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is the Motion to Dismiss (Doc. 27) filed by Defendants Samson Contour Energy E&P, LLC; Samson Resources II, LLC; and Samson Resources Company, LLC. For the following reasons, the Motion is **GRANTED**.

### BACKGROUND

This case arises out of a contract dispute. On November 15, 2007, Plaintiff LLOG Exploration Offshore, Inc. ("LLOG") and Defendant Samson Contour Energy E&P, LLC ("Samson Contour") entered into a Purchase and Sale Agreement ("PSA"). Under the PSA, Samson Contour acquired from LLOG four oil and gas leases of land located on the Outer Continental Shelf in the Gulf of Mexico off Louisiana's coast. By the terms of the PSA, Samson Contour also agreed to assume all costs and liabilities associated with plugging, abandoning, and decommissioning certain wells and other structures on the four leases.

In 2010, Samson Contour assigned the leases to Dynamic Offshore Resources, LLC, a corporate predecessor in interest to Fieldwood Energy

1

Offshore, LLC ("Fieldwood"). In September 2015, Samson Contour filed for Chapter 11 bankruptcy. Its bankruptcy plan discharged all obligations, liabilities, and claims against it.

In 2020, Fieldwood also filed for Chapter 11 bankruptcy and indicated its intent to abandon the leases and have prior lessees perform any necessary plugging, abandoning, and decommissioning activities. The bankruptcy court confirmed Fieldwood's plan, including the abandonment of the leases.

In March of 2022, the United States Department of the Interior's Bureau of Safety and Environmental Enforcement ("BSEE") issued orders to Samson Contour and LLOG to decommission the wells associated with the four leases within one year and the platforms and pipelines by October 31, 2023. BSEE also commanded the organizations to identify which one would begin immediate maintenance and monitoring of the wells and facilities in the meantime.

In response to these orders, LLOG sent a letter to Samson Contour demanding it begin performing the maintenance and monitoring and notify BSEE of as much. Samson Contour allegedly failed to respond to this letter or comply with BSEE's orders. On March 15, 2022, LLOG initiated this action for breach of contract and declaratory judgment against Samson Contour and two alleged alter egos of same, namely, Samson Resources, II, LLC and Samson Resources Company, LLC. LLOG alleges that Samson Contour is obligated under the PSA to assume liability and indemnify LLOG for plugging and abandoning the wells at issue.

Now before the Court is Defendants' Motion to Dismiss LLOG's claims, in which they argue that Samson Contour's obligations under the PSA were discharged in its 2015 bankruptcy, and it is therefore no longer obligated to indemnify LLOG for plugging and abandoning the wells.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[7]

## LAW AND ANALYSIS

The parties do not dispute that the PSA, executed in 2007, required Samson Contour to assume all costs and liabilities associated with plugging, abandoning, and decommissioning the wells subject to that agreement. The parties also do not dispute that Samson Contour's bankruptcy plan ("the Plan"), confirmed by the bankruptcy court on February 13, 2017, expressly discharged all "Claims . . . Interests, and Causes of Action of any nature

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[2] *Id.*
[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[4] *Iqbal*, 556 U.S. at 678.
[5] *Id.*
[6] *Lormand*, 565 F.3d at 255–57.
[7] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

3

whatsoever . . . whether known or unknown, against liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties."[8] However, Plaintiff points to a different article of the Plan to support its position that Samson Contour still owes obligations under the PSA. Article V(A) of the Plan provided that all executory contracts not expressly rejected were deemed assumed by Samson Contour on the effective date of the Plan. Plaintiff argues that the PSA is an executory contract that Samson Contour assumed in its bankruptcy, and therefore its obligations therein have not been discharged.

The issue then becomes whether the PSA is an executory contract. The Fifth Circuit has adopted the Countryman test to determine whether a contract is executory. "[A] contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'"[9] "[T]he test for an executory contract is whether, under the relevant state law governing the contract, each side has at least one material unperformed obligation as of the bankruptcy petition date."[10] The test's goal is to facilitate the "'debtor's rehabilitation' by giving debtors discretion to assume or reject those contracts 'where there can be uncertainty if the contract is a net asset or liability for the debtor.'"[11]

Samson Contour argues that the PSA is not an executory contract because, while it owed indemnity to LLOG under the agreement at the time of its bankruptcy, LLOG did not have an ongoing obligation under the agreement

---

[8] Doc. 27-2.
[9] Matter of Falcon V, L.L.C., 44 F.4th 348, 352 (5th Cir. 2022).
[10] *Id.*
[11] *Id.*

and therefore performance did not remain due on both sides of the agreement. LLOG, for its part, disagrees and points to three provisions of the PSA in which it argues it owes ongoing obligations. Specifically, LLOG points to its obligation (1) to mitigate damages in order to receive the benefit of indemnification; (2) to settle disputes through arbitration; and (3) to provide further assurances and information to Samson Contour after closing in order to receive the benefit of indemnification.

Plaintiff does not, however, cite to any case law suggesting that these obligations are the sort contemplated by the Countryman test.[12] The Countryman test requires that each side have at least one *material* unperformed obligation, the failure of which would constitute a *material* breach. "State law determines whether a remaining contractual obligation is material and whether the failure to perform constitutes a material breach."[13] Under Louisiana law, a party has an excuse for nonperformance only when the other party "substantially breaches" the contract."[14] "Thus, not every breach excuses the other party from the contract."[15] "[A] breach of an ancillary obligation will neither of itself excuse the other party from performing nor give sufficient justification for legal dissolution of the contract."[16] Here, LLOG performed its primary obligation—the transfer of the well leases—and

---

[12] The cases cited by Plaintiff do not stand for this proposition. *See In re* Highland Cap. Mgmt., L.P., No. 19-34054-SGJ11, 2021 WL 5769320, at *7 (Bankr. N.D. Tex. Dec. 3, 2021) (holding only that an arbitration clause was no longer binding on the debtor when the executory contract in which it was contained was rejected by the trustee); *In re* Exide Techs., 340 B.R. 222 (Bankr. D. Del. 2006), *vacated and remanded*, 607 F.3d 957 (3d Cir. 2010), as amended (June 24, 2010) ("[T]he Indemnity Obligation and the Further Assurances Obligation[] do not outweigh the factors supporting substantial performance.").

[13] Charter Sch. Sols. v. GuideOne Mut. Ins. Co., 407 F. Supp. 3d 641, 647 (W.D. Tex. 2019).

[14] LAD Servs. of La., L.L.C. v. Superior Derrick Servs., L.L.C., 167 So. 3d 746, 755–56 (La. App. 1 Cir. 2014).

[15] *Id.*

[16] Makofsky v. Cunningham, 576 F.2d 1223, 1232 (5th Cir. 1978).

therefore substantially performed under the contract.[17] Breach of any of the remaining obligations identified by Plaintiff would not excuse Samson Contour of its indemnification obligation. For example, if LLOG failed to mitigate its damages prior to seeking indemnification from Samson Contour, Samson Contour might be entitled to an offset or reduction in damages but it would not be relieved of its obligation to indemnify LLOG.

This Court finds the Fifth Circuit's recent opinion in *Matter of Falcon V* instructive. In that case, the court considered whether a suretyship agreement was an executory contract.[18] In the agreement, Argonaut Insurance provided several surety bonds guaranteeing Falcon V's performance to various third parties.[19] The Fifth Circuit found that the agreement was not executory because, although Falcon V owed an ongoing obligation to pay premiums to Argonaut and to indemnify it for any payments it made under the bonds, Argonaut had already posted the bonds and did not owe further performance to Falcon V.[20]

Here too, the PSA provides that Samson Contour owes an ongoing obligation to pay and indemnify LLOG for all costs and liabilities associated with plugging, abandoning, and decommissioning, but LLOG's obligation—to transfer to Samson Contour title to the well leases—has been completely satisfied. Indeed, LLOG admits as much in its Complaint, pleading that "LLOG has fully satisfied and performed all conditions precedent and all its obligations under the PSA."[21] Accordingly, because no material obligation remains due on both sides of the obligation, the PSA is not an executory

---

[17] *See* LA. CIVIL CODE art. 1967.
[18] *Matter of Falcon V, L.L.C.*, 44 F.4th at 352.
[19] *Id.*
[20] *Id.*
[21] Doc. 1 at 23.

contract, and Samson Contour's obligations therein were discharged in its 2017 bankruptcy plan.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion is **GRANTED.** Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that oral argument is **CANCELED**.

New Orleans, Louisiana this 6th day of February, 2023.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**